Putnam J.
was of opinion, that the libellee had such a domicile as would give this Court jurisdiction in the case, but reserved the question for the determination of the whole Court.
*421 Oct. 10th
Wilde J.
delivered the opinion of the Court. Upon the facts appearing by the report of the evidence, we are of opinion that the domicile of the defendant was, at the time of the abuse complained of, within this county. By law the libellant’s domicile followed that of her husband ; so that the parties were living within this county, according to the true meaning of the statute giving jurisdiction to this Court in cases of divorce. The libellee’s domicile of origin was in the town of Uxbridge, where he was born and brought up. In 1810 he intermarried with the libellant and removed with her to Savannah, in the state of Georgia, where he was at the time engaged in business, and there he continued to reside with his wife and family until 1821, except in the summer seasons, when he usually returned to the northern states. In 1821 he broke up his household establishment at Savannah, and returned to his father’s in Uxbridge, and after a short residence there, he established his family at Providence, where they remained until 1825, he spending about four months in each year with them ; still, however, continuing to carry on his business at Savannah. In 1825 he broke up housekeeping in Providence, separated from his wife, and from that time to the present he has kept up an establishment at Uxbridge, on the farm which was his father’s, and which was mortgaged to him before the death of his father in 1825. Here he resided during the summer months, his sisters, continuing to manage his domestic concerns for some years, and afterwards he procured other housekeepers and domestics, and continued to superintend the management of the farm, occasionally laboring on it himself.
The conclusions to be drawn from these facts seem to us sufficiently plain. The domicile of the libellee from 1810 to *422 1821 was, we think, at Savannah ; and from 1821 to 1825 a) Providence ; but when he broke up housekeeping at the lattei place in 1825, and formed a household establishment at Uxbridge, he must be considered as intending to resume, and as having actually resumed his original domicile. His residence at Savannah negotiorum ratione, for the purposes of business and the acquisition of property, is a circumstance oi little weight, and by no means sufficient to constitute a domicile. He resided there, it is true, during the larger portion of each year; but when there is a divided residence the length of residence in the one place, or the^other, will not settle the question of domicile ; but it must be determined by other circumstances.
When the defendant broke up his domestic establishment at Savannah, and withdrew his family, the presumption is strong that he intended to abandon his domicile there, and that he returned, leaving his family behind, merely for the purposes of business ; and there is no evidence that he ever after considered that place as the place of his fixed residence or habita tion. On the contrary, the presumption of his attachment to his native place and connexions, his keeping up an establishment for his family at Providence, and afterwards at Uxbridge, and his improvement of his paternal estate, are all opposed to such a supposition.
If the libellee’s residence, and the attending circumstances, had been the same for the whole period since 1810 as they appear to have been since 1825, we think it hardly would be doubted that his original domicile would have remained unchanged ; and if so, we cannot well doubt the sufficiency of the evidence to prove that during the latter period of time he did in fact resume his original domicile. The separation of the parties in 1825, has no bearing on the question of domicile since that time. The wife could not acquire a domicile sepa rate from her husband’s, and although they lived apart, she still followed his domicile.[1]
Another view might be taken of this case, if necessary. *423 Speaking individually, I should have no hesitation in saying that a man may have two domiciles in different states, or within separate jurisdictions, so as to be amenable to a process of this description in either. That a man may have two domiciles for some purposes, although he can have but one for succession to personal property, is well settled in England and in other countries. Somerville v. Lord Somerville, 5 Ves. 750.
It seems also to be clear, that the parties are sufficiently domiciled here to authorize the Court to sustain jurisdiction of the cause; and according to the Scotch decisions cited by Chancellor Kent in his Commentaries (2 Kent’s Com. 97), we should be authorized to dissolve the marriage, if this were a libel for a divorce a vinculo. The Court of Sessions, in several cases there hold, that the relation of husband and wife, wherever originally constituted, was entitled to the same protection and redress as to wrongs committed in Scotland, that belong of right to that relation by the law of Scotland ; that matrimonial obligations are juris gentium, and admit of no modification by the will of the parties ; and that foreign courts are not bound to inquire after that will, or after the municipal law to which it may correspond; that they are bound to look to their own law, especially in the administration of that department of internal jurisprudence which operates directly on public morals and domestic manners; that though marriage, contracted according to the lex loci, be valid all over the world, yet many of its rights and duties are regulated and enforced by public law, which is imperative on all who are domiciled within its jurisdiction. The same question however was brought up on appeal from Scotland to the House of Lords in England, and the decision of the twelve judges does not sustain the Scotch decisions as to divorces a vinculo. They seem to deny the competency of any foreign court to pronounce a decree of divorce a vinculo of English marriages, or to pronounce any other decree in the case than such as would be warranted by the lex loci contractus. But it might be easdy shown that divorces a mensa et thoro stand on a very different footing from divorces a vinculo, and that if the lex loci were to govern, it would not affect our decision in this *424 case. We are not called upon, however, to discuss these grave and important questions, as we are all of opinion that the domicile of the parties is satisfactorily proved to be within this county, notwithstanding the libellee’s residence at Savannah.

Divorce a mensa, et ihoro decreed.

 It seems, that the maxim, that the domicile of the wife follows that of the husband, will not be applied to oust the Court of its jurisdiction in case of a libel by a wife for a divorce. Harteau v. Harteau, 14 Pick. 181.